SAL CIRRINCIONE, Plaintiff-Appellee, v. MICHAEL JOHNSON, Defendant-Appellant.

First District (6th Division)   No. 1—95—3386

Opinion filed March 31, 1997.—Rehearing denied April 25, 1997.

Gerald Haberkorn and Lynn D. Dowd, both of Levin, McParland, Phillips, Leydig & Haberkorn, of Chicago, for appellant.

Daniel J. Pierce, of Daniel J. Pierce, P.C., of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Sal Cirrincione (plaintiff) brought this action to recover $3,700 in damages from Michael Johnson (defendant), an attorney, representing the value of chiropractic services rendered to defendant's injured client, Gil Johnson (Johnson). Following a jury trial, a verdict was entered in favor of plaintiff in the amount of $15,800, including punitive damages. Defendant argues on appeal that plaintiff has failed to state a cognizable cause of action pursuant to the Physicians Lien Act (the Act) (770 ILCS 80/01 (West 1994)) or alternative, common law remedies, and that, in-any event, punitive damages are not assessable in this genre of cases. For the reasons that follow, we affirm in part and reverse in part.

In December 1985, Johnson was injured in an automobile accident. Johnson subsequently received chiropractic services from plaintiff in May 1986. At the same time, Johnson retained Lawrence Fox (Fox) to represent him in a suit against the driver of the other vehicle.

While Johnson's personal injury suit was pending, plaintiff and Fox discussed how and when plaintiff would be paid for the services provided to Johnson. Fox advised plaintiff to file a physician's lien pursuant to the Act. Plaintiff procured a form from an associate that was to be signed by Johnson, the patient/client, authorizing plaintiff to provide Johnson's attorney with a report of "his examination, diagnosis, treatment, prognosis" in connection with "an accident in which [Johnson] was recently involved." The document also authorized the attorney to pay the plaintiff for medical services directly out of any settlement or judgment.

Perhaps even more significant is the following provision:
> "And I hereby further give a Lien on my case to said doctor against any and all proceeds of my settlement, judgment or verdict which may be paid to you, my attorney, or myself, as the result of the injuries in connection therewith."

Additionally, the document provides:
> "I hereby instruct that in the event another attorney is substituted in this matter, the new attorney honor this lien as inherent to the settlement and enforceable upon the case as if it were executed by him."

Fox assured plaintiff that this form would be adequate to ensure his right to payment.

Shortly thereafter, Fox received appointment to the circuit court of Cook County and referred the case to defendant. Several months later, plaintiff called Fox and learned that defendant was now representing Johnson. Plaintiff testified that, during a subsequent telephone conversation with defendant, defendant found the document and stated that "everything was okay."

Judge Fox testified that he discussed the lien with defendant and advised defendant of plaintiff's expectation to be paid from any settlement funds. Fox further testified that defendant "agreed" that the lien was "valid," although on cross-examination Fox stated that the two never specifically discussed the validity of the document.

In August 1988, plaintiff submitted an itemized statement of bills and a report documenting the treatment prescribed to Johnson to Country Mutual Insurance Company, but he did not include a physician's notice of lien form. In April 1988, the insurance carrier sent a "med-pay" check to defendant in the amount of $3,744, which defendant, rather than paying plaintiff, distributed to Johnson after deducting his fee. However, defendant maintains that the insurance company stopped payment on the check after learning that Johnson had not paid plaintiff for the services provided to him. No cancelled check is in the record.

Seven months later, plaintiff spoke with defendant and discovered that Johnson's action had been settled for $50,000. Plaintiff demanded payment for his services. Defendant refused payment and told plaintiff that he would not be paid from the settlement proceeds because Johnson had informed him that Johnson had already paid plaintiff.

On October 4, 1990, plaintiff filed a complaint against both Johnson and defendant alleging violations of the Act and unreasonable nonpayment of fees. Plaintiff was given leave to amend his complaint three years later to add the following relevant allegations: (1)

violation of the Act against both defendant and Johnson for failure to honor plaintiff's "valid and enforceable lien"; (2) conversion of the $3,744 "med-pay" check against defendant; (3) defendant's refusal to honor the physician's lien constituted wilful and wanton misconduct warranting the award of punitive damages; and (4) an "equitable lien" theory of recovery was available.

Plaintiff obtained a default judgment against Johnson but failed to prove up damages. Instead, plaintiff proceeded to trial against defendant on the allegations of the complaint. During trial, the court ruled, as a matter of law, that plaintiff had perfected a valid lien and later instructed the jury to this effect. The jury returned a verdict of $15,800 in favor of plaintiff. The trial court denied defendant's motions for post-trial relief. Defendant now appeals.

■ The Act provides, in part:

"Every licensed physician practicing in this State who renders services by way of treatment to injured persons, except services rendered under the provisions of the Workers' Compensation Act or the Workers' Occupational Diseases Act, shall have a lien upon all claims and causes of action for the amount of his reasonable charges up to the date of payment of such damages.

Provided, however, that the total amount of all liens hereunder shall not exceed 1/3 of the sum paid or due to the injured person on the claim or right of action, and provided further, *that the lien shall in addition include a notice in writing containing the name and address of the injured person, the date of the injury, the name and address of the licensed physician practicing in this State, and the name of the party alleged to be liable to make compensation to such injured person *** and the party against whom such claim or right of action exists.*
***

Service shall be made by registered or certified mail or in person." (Emphasis added.) 770 ILCS 80/1 (West 1994).

It is undisputed that plaintiff's lien does not comply with the Act's statutory requirements in the following respects: (1) it does not contain Johnson's address; (2) it does not give the date of Johnson's injury; (3) it does not list the name of the party or parties liable for Johnson's injuries; (4) it fails to give the name of the tort defendant, Mr. Lacalamita (the other driver in the 1985 auto accident); and (5) no attempt was made to serve Mr. Lacalamita, his insurance carrier or Johnson's insurance carrier.

The Act, by its terms, imposes a lien for medical services rendered upon the claims of injured persons who have causes of action against third parties. The Act further sets out the manner and form of the notice required to give effect to the lien.

■ As a general principle, we first acknowledge that although statutes imposing liens are liberally construed to effectuate the purpose intended by the enacting legislation, statutory liens are limited in operation and extent by the terms of the statute. 51 Am. Jur. 2d *Liens* §§ 11, 38 (1970); *Gaskill v. Robert E. Sanders Disposal Hauling*, 249 Ill. App. 3d 673 (1993).

However, in *In re Estate of Cooper*, 156 Ill. App. 3d 270 (1987), the court found that strict compliance with the requirements of serving and content of the notice of lien was not necessary where the party to be charged filed a petition to adjudicate the lien, although no notice of lien had been served upon it. The court held that the act of requesting adjudication waived the requirements of the statute. *Cooper*, 156 Ill. App. 3d at 272.

In the case at bar, the party to be charged, Johnson, acknowledged the existence of the lien. What was then to be expected of the plaintiff? Would he be expected to prepare and serve a notice of lien? To be sure, the statute requires that he give notice to the parties against whom Johnson's claim is directed and that was not done, but this action is not against the insurance carrier or its insured. It is against the party and attorney of the person who gave written acknowledgement of the lien. The Act does not, in any event, require notice of the lien to the attorney for the party to whom the services have been rendered.

Our supreme court has long recognized an exception to the general rule of strict construction:

> "The doctrine of strict construction was never meant to be applied as a pitfall to the unwary, in good faith pursuing the path marked by the statute, nor as an ambuscade from which an adversary can overwhelm him for an immaterial misstep. Its function is to preserve the substantial rights of those against whom the remedy offered by the statute is directed, and it is never employed otherwise." *United Cork Cos. v. Volland*, 365 Ill. 564, 572 (1937).

See also *First Federal Savings & Loan Ass'n v. Connelly*, 97 Ill. 2d 242, 251 (1983); *Granite City Lime & Cement Co. v. Board of Education of School District No. 126*, 203 Ill. App. 134, 140 (1916) ("The object and purpose of the lien law is to protect those who in good faith furnish materials for the construction of buildings, and such persons ought not by a strict construction to be deprived of this remedy").

To allow defendant to later ignore plaintiff's lien, claiming technical deficiencies, is at variance with the purpose of this and other lien laws. See *Bloom v. Richardson*, 308 Ill. App. 320 (1941) (abstract of op.) (attorney's lien act is intended to protect one not having actual

notice of a claim for lien and not to afford a technical defense by means of which to defeat a valid claim). As this court has observed in the past, "there is authority which favors some flexibility in applying the general rules, so that the statute's provisions are not construed so technically that its remedial purpose is undermined and all but lost in the process." *Aluma Systems, Inc. v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 839 (1990).

■ We hold similarly that defendant cannot deny the existence of plaintiff's valid physician's lien under the umbrella of strict construction. Put simply, defendant was in possession of the acknowledgement of the lien, was aware of Johnson's intent to be bound by it, and assured both Fox and plaintiff that the lien would be honored.

We recognize that our decision is at variance with a recent opinion of the third district in *Meier v. Olivero*, 279 Ill. App. 3d 630 (1996). In *Meier*, a physician sent notice to his former patient's attorney in which he claimed a lien of $1,250 against the amount recovered by the patient in his personal injury case. When the case settled, the attorney distributed one-third of the settlement amount on a *pro rata* basis to various medical providers, including the plaintiff physician. However, the physician determined that the attorney had miscalculated his share of the proceeds and filed a complaint against the attorney alleging violation of the Act. *Meier*, 279 Ill. App. 3d at 631.

The notice of lien in *Meier* contained the same deficiencies as are at issue in the present case. The *Meier* court concluded:

"Dr. Meier's lien did not include Donaldson's address, Dr. Meier's address, the date of the injury or the name of the party alleged to be liable to Donaldson. Each of these items is required by the Physicians Lien Act in order to perfect a valid lien. Since Dr. Meier did not observe these statutory requirements, he failed to perfect a valid lien." *Meier*, 279 Ill. App. 3d at 633.

The *Meier* court declined to enforce the lien despite the fact that the attorney acknowledged the lien, had actual notice of the lien *and paid* the physician from the settlement proceeds *as directed by the Act*. Although the attorney recognized, acknowledged and disbursed funds pursuant to the Act, the *Meier* court refused to enforce the physician's lien because notice was deficient. This is the worshipping of form over substance.

The first paragraph of the Act imposes and describes the lien that is created by the rendering of medical services. The next paragraph sets out the requisites of the notice and the parties to be served to impress the proceeds of a settlement or verdict with the lien. In *Cooper*, the requirements of the second paragraph were

fulfilled by the filing of a petition to adjudicate the lien. In *Meier*, the court believed that the payment to a purported lienholder was not a sufficient act to warrant the imposition of the lien. We see no material difference between filing a petition to adjudicate the lien and actually paying the lienholder pursuant to the Act.

If anything, the case at bar is stronger than *Cooper* or *Meier*. Actual notice *coupled with* the written acknowledgement by the party to be charged and acknowledgement by counsel should be sufficient to waive the requisites of the Act as in *Cooper*. We therefore disagree with *Meier* and support the trial court's finding that the lien was, as a matter of law, valid and enforceable.

Lest attorneys feel that they are now unnecessarily at risk, it should be noted that the Act specifically bars the imposition of good-faith payments made without notice of the lien.

However, we are compelled to vacate the jury's award of punitive damages. Punitive damages are not favored in Illinois and must be closely scrutinized. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 188 (1978). Punitive damages are not authorized by the Act, nor are they generally available in actions for breach of contract, because a party suing for breach is entitled only to the benefit of his bargain and the purpose of awarding damages is to place the injured party in the position he would have been in had there been no breach. *Bank of Illinois v. Bill's King City Stationary, Inc.*, 198 Ill. App. 3d 434 (1990). Since punitive damages were not available pursuant to the Act or a breach of contract claim, which is the best interpretation of plaintiff's alternative cause of action, we reverse the jury's award of $15,800. We affirm its finding of liability and, pursuant to Supreme Court Rule 366 (155 Ill. 2d R. 366), enter judgment for plaintiff and against defendant in the amount of $3,700, representing the value of the medical services provided to Johnson.

Affirmed in part; reversed in part.

ZWICK and QUINN, JJ., concur.